1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUAN CARLOS HERRERA, | ) Case No.: 1:12-cv-00437 - JLT |
| Plaintiff, | ) ORDER DIRECTING ENTRY OF JUDGMENT IN |
| v. | ) FAVOR OF DEFENDANT MICHAEL J. ASTRUE, ) COMMISSIONER OF SOCIAL SECURITY, AND |
| MICHAEL J. ASTRUE, | ) AGAINST PLAINTIFF JUAN CARLOS HERRERA |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

11

12

13

14

15

16

17

18        Juan Carlos Herrera ("Plaintiff") asserts he is entitled to benefits under Title XVI the Social

19   Security Act.  Plaintiff argues the administrative law judge ("ALJ") erred in his evaluation of the

20   medical evidence.  Therefore, Plaintiff seeks judicial review of the administrative decision denying his

21   claim for benefits.  For the reasons set forth below, the administrative decision is **AFFIRMED**.

22                                **PROCEDURAL HISTORY**

23        Plaintiff filed an application supplemental security income on April 8, 2008, alleging disability

24   beginning April 1, 2005.  (Doc. 14-6 at 3-7).  The Social Security Administration denied his claims

25   initially on August 26, 2008, and upon reconsideration on November 19, 2008.  (Doc. 14-4 at 2-3).

26   After requesting a hearing, Plaintiff testified before an ALJ on October 27, 2010.  (Doc. 14-3 at 28).

27   The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order

28   denying benefits on December 23, 2010.  *Id.* at 12-23.  Plaintiff requested a review by the Appeals

1   Council of Social Security, which denied review of the ALJ's decision on January 26, 2012. *Id.* at 2-

2   4. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security

3   ("Commissioner").

4          On March 22, 2012, Plaintiff initiated this action by filing his complaint, seeking judicial

5   review of the Commissioner's decision. (Doc. 1). Plaintiff filed his opening brief on November 5,

6   2012, asserting the ALJ erred in rejection the opinions of his treating physician and an examining

7   physician. (Doc. 15). Defendant filed his opposition to the brief on January 2, 2013. (Doc. 18).

8   Plaintiff did not file a reply.

9                                    **STANDARD OF REVIEW**

10         District courts have a limited scope of judicial review for disability claims after a decision by

11  the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact,

12  such as whether a claimant was disabled, the Court must determine whether the Commissioner's

13  decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The

14  ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

15  standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of*

16  *Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

17         Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a

18  reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

19  389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole

20  must be considered, because "[t]he court must consider both evidence that supports and evidence that

21  detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

22                                   **DISABILITY BENEFITS**

23         To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to

24  engage in substantial gainful activity due to a medically determinable physical or mental impairment

25  that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C.

26  § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

27         his physical or mental impairment or impairments are of such severity that he is not
           only unable to do his previous work, but cannot, considering his age, education, and
28         work experience, engage in any other kind of substantial gainful work which exists in

                                              2

1
2
the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

3   42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

4   *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of

5   disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other

6   substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

7   **DETERMINATION OF DISABILITY**

8   To achieve uniform decisions, the Commissioner established a sequential five-step process for

9   evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920 (a)-(f).  The process requires the ALJ

10   to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged

11   disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed

12   impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the

13   residual functional capacity to perform to past relevant work or (5) the ability to perform other work

14   existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider objective

15   medical evidence, opinions, and hearing testimony.[1]  20 C.F.R. §§ 416.927, 416.929.

16   **A.      Relevant Medical Opinions**

17   On June 6, 2008, Plaintiff had a polysomnography, which recorded his "respiratory effort,

18   body position, airflow, snoring sound, pulse rate and limb movement channels."  (Doc. 14-8 at 3-8).

19   Dr. Van Grundy interpreted the results of the polysomnography, and determined Plaintiff suffered

20   from severe obstructive sleep apnea.  *Id.* at 3.

21   Dr. Sudhir Kapoor performed a comprehensive internal medicine evaluation on June 18, 2008.

22   (Doc. 14-8 at 11).  Plaintiff informed Dr. Kapoor that he had low back pain and obstructive sleep

23   apnea "for the last five years."  *Id.*  Plaintiff said he had fallen asleep while driving, working and

24   talking.  *Id.*  Plaintiff reported he had diabetes and his weight had "increased tremendously over the last

25   couple of years."  *Id.*  Further, Plaintiff told Dr. Kapoor that his breathing problem had "worsened

26   because of his obesity," and he would get "short of breath after walking one fourth of a block."  *Id.* at

27

28   _____
[1] According to Plaintiff, the hearing testimony is not relevant to the appeal.  (Doc. 15 at 4).  Accordingly, his testimony is not summarized below.

1    11-12. Plaintiff reported he was unable to "do cooking, yard work, household work, vacuuming,

2    mopping or dishes." *Id.* at 12.

3        Dr. Kapoor noted Plaintiff was morbidly obese and weighed "400+," but his precise weight

4    was not measurable at the clinic. (Doc. 14-8 at 13). He observed Plaintiff was able to "sit comfortably

5    during the exam," but required "help to get off the examination table because he was having pain in

6    his back and also because of his morbid obesity." (Doc. 14-8 at 13). Dr. Kapoor found Plaintiff's

7    "muscle bulk and tone were good," and his strength was "5/5 in upper and lower extremities." *Id.* at

8    14. Further, Plaintiff's "bilateral grip strength was extremely good." *Id.* Based upon the examination,

9    Dr. Kapoor offered the following functional assessment: "The number of hours the claimant is

10   expected to stand and walk in an eight-hour workday is approximately two hours. The claimant needs

11   frequent breaks while doing this for approximately two hours. … The number of hours the claimant is

12   expected to sit in an eight-hour workday is about four hours." *Id.* at 15. Dr. Kapoor attributed these

13   limitations to Plaintiff's obesity. *Id.* According to Dr. Kapoor, Plaintiff was able to lift and carry 40

14   pounds frequently and 50 pounds occasionally. *Id.* In addition, Dr. Kapoor determined Plaintiff had

15   postural limitations, and was unable to "bend, stoop or crouch frequently," but could do so

16   "occasionally only for a few seconds." *Id.* at 16. Plaintiff could not "reach objects over his forehead,"

17   but did not have further manipulative limitations. *Id.* Dr. Kapoor concluded Plaintiff was "capable of

18   sustaining at least sedentary activities with customary breaks for about six hours." *Id.*

19       On July 11, 2008, Dr. Keith Quint completed a residual functional capacity assessment. (Doc.

20   14-8 at 17-21). Dr. Quint opined Plaintiff was able to frequently lift and carry 10 pounds and 20

21   pounds occasionally. *Id.* at 18. In addition, he believed Plaintiff could stand and/or walk for at least

22   two hours in an eight-hour workday, and sit about six hours in an eight-hour workday. *Id.* Due to

23   Plaintiff's "[b]ack pain with morbid obesity," Dr. Quint found Plaintiff was limited to occasionally

24   climbing ramps and stairs, but could never climb ladders, ropes or scaffolds. *Id.* at 19. In addition,

25   Plaintiff could occasionally balance, stoop, kneel, crouch, and crawl. *Id.* He opined Plaintiff did not

26   have manipulative, visual, or communicative limitations, but should avoid concentrated exposure to

27   "unprotected heights." *Id.* at 20. Dr. Quint believed the assessment of Dr. Kapoor was "confusing"

28   because he gave "lift carry 50 lbs but then limits sitting to only 4 hours due to obesity." *Id.*

4

1    Accordingly, Dr. Quint opined a sedentary residual functional capacity with the above limitations was

2    "reasonable with pain, fatigue and morbid obesity considered." *Id.* at 21.

3            Plaintiff had a pulmonary function test on August 22, 2008.  (Doc. 14-8 at 23-26).  According

4    to Dr. Emmanuel Fabella, the test showed "no evidence of obstructive lung disease." *Id.* at 24.

5    However, Dr. Fabella opined it was "possible" Plaintiff had "mild restrictive lung disease." *Id.*

6            After reviewing the pulmonary functioning test results, Dr. Quint opined the sedentary residual

7    functional capacity "still appear[ed] valid."  (Doc. 14-8 at 30).  Likewise, Dr. Lavanya Bobba affirmed

8    the sedentary residual functional capacity assessment with postural and hazard restrictions on

9    November 18, 2008.  *Id.* at 76-77.

10           Dr. Steven Stoltz completed a consultative evaluation on April 10, 2010.  (Doc. 14-8 at 83-94).

11   Dr. Stoltz noted Plaintiff weighed 380 pounds, but reported "[h]is maximum weight was 450 pounds."

12   *Id.* at 89.  Plaintiff told Dr. Stoltz he had pain in his legs, ankles, knees, and lower back, which caused

13   "difficulty playing with his children at home, climbing stairs and doing heavy lifting." *Id.* Upon

14   examination, Dr. Stoltz found Plaintiff's range of motion in his neck, shoulders, elbows, writs, hips,

15   knees, and ankles were within normal limits.  *Id.* at 91-93.  However, Plaintiff had a reduced range of

16   motion with forward flexion in his back.  *Id.* at 92.  Dr. Stoltz found Plaintiff's gait was normal, his

17   strength was "5/5 in all extremities," and he had good muscle tone.  *Id.* at 93.  Dr. Stoltz opined:

18   
19           Based on my observations, history, review of available medical records and objective
             clinical findings, it is my opinion that the claimant can lift 20 pounds occasionally and
             10 pounds frequently.  He can carry occasionally up to 10 pounds.  The claimant can sit
20           for two hours at one time without interruption and stand and/or walk for one hour each
             at one time without interruption.  In a total eight hour work day he can sit for six hours,
21           stand for three hours and walk for two hours.  The claimant does not require a cane to
             ambulate.
22

23   *Id.* at 94.  Dr. Stoltz found Plaintiff was able to perform all postural activities "on an occasional basis,"

24   with the exception of climbing ladders and scaffolds, which he opined Plaintiff should never do.  *Id.* at

25   86, 94.  Also, he believed Plaintiff was able to "perform activities with either hand on a frequent but

26   not continuous basis." *Id.* at 85, 94.

27           Plaintiff's treating physician, Dr. Antonio Villalvazo, completed a physical residual functional

28   capacity assessment on September 30, 2010.  (Doc. 14-2 at 96-103).  According to Dr. Villalvazo,

1   Plaintiff was able to lift and carry 20 pounds occasionally and 25 pounds frequently.  *Id.* at 97.  He

2   opined Plaintiff could stand and/or walk less than two hours in an eight-hour day.  *Id.*  Plaintiff needed

3   to "periodically alternate sitting and standing to relieve pain or discomfort" because his morbid obesity

4   made it "difficult to move."  *Id.* Dr. Villalvazo believed Plaintiff was able to occasionally balance,

5   crouch, and climb ramps and stairs, but he never stoop; kneel; crawl; or climb ladders, ropes, or

6   scaffolds.  *Id.* at 98.  Dr. Villalvazo explained Plaintiff's "main limitation[s]" were "obesity [and]

7   depression," which impaired his ability "to participate in normal work and life."  *Id.* at 101.

8   **B.      The ALJ's Findings**

9           Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial

10  gainful activity after his application date.  (Doc. 14-3 at 63).  Second, the ALJ found Plaintiff's morbid

11  obesity, sleep apnea, diabetes mellitus, chronic knee/back pain and hypertension were severe

12  impairments. *Id.* These impairments did not meet or medically equal one of the listed impairments,

13  including the Listings 1.02, 1.04, 2.02, and 11.00. *Id.* at 15-17. Next, the ALJ determined Plaintiff had

14  the following residual functional capacity ("RFC"):

15          • The claimant can lift twenty pounds occasionally and ten pounds frequently
            • The claimant can sit for two hours at one time without interruption
16          • The claimant can sit for six hours total out of an eight hour workday
            • The claimant can stand/walk for one hour at a time without interruption
17          • In total, the claimant can sit six hours, stand three hours, and walk two hours in an eight
18            hour workday
            • The claimant is limited to frequent (not constant) manipulations with the hands bilaterally
19          • The claimant is limited to frequent (not constant) use of foot controls bilaterally
            • The clamant is limited to occasional postural activities
20          • The claimant must avoid climbing ladders/ropes/scaffolds
            • The claimant is limited to occasional work at unprotected heights or with moving
21            mechanical parts or using a motor vehicle.
22

23  (Doc. 14-3 at 17).  With this RFC, the ALJ found Plaintiff was able to perform his past relevant work

24  as a translator.  *Id.* at 22.  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the

25  Social Security Act.  *Id.* at 22-23.

26                                    **DISCUSSION AND ANALYSIS**

27          Plaintiff asserts the ALJ erred in his evaluation of the medical evidence.  Specifically, Plaintiff

28  asserts the ALJ failed to properly evaluate the opinions of Dr. Villalvazo (his treating physician) and

1    Dr. Kapoor (an examining physician).  (Doc. 15 at 6-10).  On the other hand, Defendant asserts the

2    ALJ's evaluation of the medical record was proper, and incorporated the opinions of Drs. Villalvazo

3    and Kapoor.  (Doc. 18 at 25).

4            In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating

5    physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-

6    examining physicians, who neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830

7    (9th Cir. 1996).  Generally, the opinion of a treating physician is afforded the greatest weight in

8    disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on

9    the ultimate issue of a disability.  *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881

10   F.2d 747, 751 (9th Cir. 1989).  Also, an examining physician's opinion is given more weight than the

11   opinion of a non-examining physician.  20 C.F.R. § 404.1527(d)(2).

12           An ALJ may reject the controverted opinion of a physician with "specific and legitimate"

13   reasons, supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830; *see also Thomas v.*

14   *Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  When there is conflicting medical evidence, "it is the

15   ALJ's role to determine credibility and to resolve the conflict."  *Allen v. Heckler*, 749 F.2d 577, 579

16   (9th Cir. 1984).  The ALJ's resolution of the conflict must be upheld by the court when there is "more

17   than one rational interpretation of the evidence."  *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016,

18   1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the

19   evidence, and if the evidence can support either outcome, the court may not substitute its judgment for

20   that of the ALJ").  The opinion of an examining physician may be rejected whether or not the opinion

21   is contradicted by another.  *Magallanes*, 881 F.2d at 751.

22   **A.     Opinion of Dr. Villalvazo**

23           Plaintiff notes Dr. Villalvazo opined he was "able to stand/walk for less than two hours total

24   per workday; must be able to sit/stand periodically; and could not stoop."  (Doc. 15 at 6).  According

25   to Plaintiff, the ALJ failed to identify specific and legitimate reasons for rejecting these opinions of

26   Dr. Villalvazo.  *Id.*  Plaintiff contends, "The ALJ and Dr. Villalvazo are almost entirely consistent

27   with one another as to the cause of [Plaintiff's] functional limitations.  [Citation.]  Consequently, it is

28   curious at best as to why the ALJ would claim Dr. Villalvazo's opinions are not well supported."  *Id.*

1    at 7-8.  In addition, Plaintiff asserts the ALJ improperly considered the fact that Dr. Villalvazo is not a

2    mental health practitioner.  *Id.* at 8.

3         Notably, when assessing the opinion of Dr. Villalvazo, the ALJ explained "significant weight"

4    was given to the opinion of Dr. Villalvazo.  (Doc. 14-3 at 20).  Also, the ALJ found "Dr. Villalvazo's

5    residual functional capacity is consistent with the claimant being able to perform sedentary work with

6    appropriate limitations."  *Id.*  However, the ALJ discounted part of the opinion because Dr. Villalvazo

7    "does not reference the clinical record to support his opinions and in general, his opinion is not well-

8    supported."  *Id.*  Further, the ALJ noted Dr. Villalvazo was "not a mental health practitioner and

9    deciding limitations due to the claimant's depression [was] beyond his area of expertise."  *Id.*

10        The Ninth Circuit has rejected the assumption that evidence of mental impairment must be

11   offered by psychiatrist, as under general principles of evidence law, a primary care physician was

12   qualified to give medical opinion on mental state as it related to claimant's physical disability.  *See*

13   *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  Accordingly, this was not a reason for giving

14   less weight to the opinion of Dr. Villalvazo.  Nevertheless, the Ninth Circuit has determined an ALJ

15   may reject the opinion of a physician solely because it lacks the support of "objective medical signs

16   and findings."  *Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989

17        In a Social Security Ruling, the Commissioner explained the opinion of a physician is not

18   entitled to controlling weight when the "opinion is not well-supported by medically acceptable clinical

19   and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case

20   record."  SSR 96-2p, 1996 SSR LEXIS 9, at *9.  Although Social Security Rulings issued by the

21   Commissioner to clarify regulations and policies do not have the force of law, the Ninth Circuit gives

22   the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations.

23   *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).  Consequently, the Ninth Circuit determined the

24   opinion of a treating physician may be rejected when it is "conclusory and brief" and lacks support of

25   clinical findings.  *Magallanes*, 881 F.2d at 751; *see also Young v. Heckler*, 803 F.2d 963, 968 (9th Cir.

26   1986) (a physician's opinion may be rejected "if brief and conclusory in form with little in the way of

27   clinical findings to support [its] conclusion"); *Crane v. Shalala*, 76 F.3d 251, 253(9th Cir. 1996)

28

1  (finding "[t]he ALJ permissibly rejected… reports that did not contain any explanation of the bases of

2  their conclusion").

3          Here, the ALJ determined the opinion of Dr. Villalvazo was "not well-supported" because he

4  failed to support his opinion with references to the clinical record.  (Doc. 14-3 at 20).  Review of the

5  opinion offered by Dr. Villalvazo confirms he failed to support his conclusions that Plaintiff was

6  limited to standing and walking for less than two hours, needed a sit/stand option, and was unable to

7  stoop, the ALJ's decision to reject these opinions was proper.  As explained above, the lack of support

8  is a specific, legitimate reason for rejecting the opinion of a treating physician.  *See Young*, 803 F.2d at

9  968; *Crane*, 76 F.3d at 253.  Accordingly, the ALJ did not err in rejecting portions of the opinion of

10  Dr. Villalvazo because he did not explain the bases for his conclusions.

11  **B.       Opinion of Dr. Kapoor**

12          Plaintiff asserts the ALJ failed to properly evaluate the opinions of Dr. Kapoor, an examining

13  physician, who opined: "The number of hours the claimant is expected to stand and walk in an eight-

14  hour workday is approximately two hours.  The claimant needs frequent breaks while doing this for

15  approximately two hours. …The number of hours the claimant is expected to sit in an eight-hour

16  workday is about four hours."  (Doc. 14-8 at 15).  According to Dr. Kapoor, Plaintiff was "capable of

17  sustaining at least sedentary activities with customary breaks for about six hours."  *Id.* at 16. Notably,

18  the record also contains the opinion of another examining physician, Dr. Stoltz, who opined Plaintiff

19  could "sit for six hours, stand for three hours and walk for two hours" in an eight-hour day.  (Doc. 14-

20  8 at 94).  The ALJ explained he gave "greater weight" to the opinion of Dr. Stoltz, because his

21  examination of Plaintiff was completed more recently, and was "better supported with objective

22  clinical findings."  (Doc. 14-3 at 19).

23          When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to

24  resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the

25  conflict must be upheld by the Court when there is "more than one rational interpretation of the

26  evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact

27  and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support

28  either outcome, the court may not substitute its judgment for that of the ALJ"). Moreover, an "ALJ is

1  entitled to choose between differing medical opinions of equal weight.  Indeed, that is the ALJ's

2  function."  *Williams v. Astrue*, 2010 U.S. Dist. LEXIS 93511, at *16 (N.D. Cal. Sept. 8, 2010) (citing

3  *Andrews v. Shalala*, 53 F.3d 1035, 1042-43 (9th Cir. 1995)).

4        Significantly, the ALJ's decision to give greater weight to the opinion of Dr. Stoltz than that of

5  Dr. Kapoor is supported by substantial evidence in the record.  The term "substantial evidence"

6  "describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the

7  opinion *need not* prove by a preponderance that the opinion is wrong."  1996 SSR 4 LEXIS 9 at *8.

8  Rather, "[i]t need only be such relevant evidence as a reasonable mind would accept as adequate to

9  support a conclusion that is contrary to the conclusion expressed in the medical opinion."  *Id.*  As

10  explained by the Ninth Circuit, the opinions of non-examining physicians "may constitute substantial

11  evidence when it is consistent with other independent evidence in the record."  *Tonapetyan v. Halter*,

12  242 F.3d 1144, 1149 (9th Cir. 2001).

13        Here, Drs. Quint and Bobba reviewed Plaintiff's medical records, including pulmonary

14  functioning test results, and opined Plaintiff was able to perform sedentary work with postural and

15  hazard restrictions.  (Doc. 14-8 at 21, 30, 76-77).  Accordingly, their opinions were consistent with the

16  opinion of Dr. Stoltz, and are substantial evidence in support of the residual functional capacity set

17  forth by the ALJ.  *Tonapetyan*, 242 F.3d at 1149; *Andrews*, 53 F.3d at 1042.

18                                              **CONCLUSION AND ORDER**

19        The ALJ set forth a specific, legitimate reason for rejection portions of the opinion offered by

20  Plaintiff's treating physician.  Although the evidence may be "susceptible to more than one rational

21  interpretation," it was within the province of the ALJ to give greater weight to the opinion of one

22  examining physician over another, thereby rejecting portions of the opinion of Dr. Kapoor.  *See*

23  *Williams*, 2010 U.S. Dist. LEXIS 93511, at *16; *Rogers v. Comm'r of Soc. Sec.*, 2011 U.S. Dist.

24  LEXIS 13741, at *21 (E.D. Cal. Jan. 25, 2011), *aff'd* 2012 U.S. App. LEXIS 14923 (9th Cir. Cal. July

25  20, 2012).  Therefore, the ALJ's determination that Plaintiff is not disabled must be upheld by the

26  Court, because the ALJ applied the proper legal standards and the residual functional capacity is

27  supported by substantial evidence.  *See Sanchez*, 812 F.2d at 510.

28  ///

1    Accordingly, **IT IS HEREBY ORDERED**:

2    1.    The decision of the Commissioner of Social Security is **AFFIRMED**; and

3    2.    The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Michael J.

4          Astrue, Commissioner of Social Security, and against Plaintiff Juan Carlos Herrera.

5

6    IT IS SO ORDERED.

7    Dated:    **February 21, 2013**                    **/s/ Jennifer L. Thurston**
                                                         UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28